UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| RANDY BRUSKA, | Case No. 13-CV-3076 (PJS/FLN) |
| Plaintiff, | |
| v. | ORDER |
| BUNTING BEARINGS, LLC; PETERBILT MOTORS COMPANY, a wholly owned division of PACCAR, Inc., a Delaware corporation, | |
| Defendants. | |

Lucas V. Cragg and Scott A. Teplinsky, TEPLINSKY LAW GROUP, for plaintiff.

Terri L. Hommerding, KELLY R. RODIECK & ASSOCIATES, for Bunting Bearings, LLC.

Michael T. Berger and M. Annie Santos, HINSHAW & CULBERTSON LLP, for Peterbilt Motors Company.

Patrick J. Kelly, WESTERN NATIONAL MUTUAL INSURANCE CO., for Randy's Sanitation, Inc.

Plaintiff Randy Bruska drove a garbage truck for Randy's Sanitation, Inc. ("Randy's"). Bruska was injured in the course of his employment when the brakes in his truck failed, causing him to collide with another vehicle. Bruska brings this product-liability action against Bunting Bearings, LLC ("Bunting") and Peterbilt Motors

Company ("Peterbilt"), alleging that they are liable as the manufacturer and distributor of the allegedly defective part.[1]

This matter is before the Court on defendants' motions for summary judgment and to exclude the testimony of Bruska's expert under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).[2] For the reasons that follow, the Court grants defendants' summary-judgment motion as to all claims against Peterbilt and as to Bruska's failure-to-warn and warranty claims against Bunting. Defendants' motions are denied in all other respects.

## I.  BACKGROUND

As noted, Bruska was employed by Randy's as a garbage-truck driver. On October 19, 2009, as Bruska was driving his route, he approached an intersection. Bruska Dep. 29-30. The light turned yellow, and Bruska applied the brakes. Bruska Dep. 30. Bruska felt something snap under his foot, and the truck continued into the intersection, where it collided with another truck. Bruska Dep. 30-32. After the accident, Bruska found the brake pedal lying on the floor of his truck; the pivot

---

[1] Bruska originally also brought a claim against Applied Industrial Technologies, Inc., as a seller or distributor of the defective part. Bruska voluntarily dismissed that claim with prejudice. ECF Nos. 64, 65.

[2] Bunting did not file any motions, but notified the Court by letter that it joined Peterbilt's motions. ECF No. 80.

bearings, which fasten the brake assembly to the floor, were broken.[3] Bruska Dep. 34; Cragg Aff. Ex. A Fig. 3.

Bruska was driving a Peterbilt truck that Randy's purchased in 2004 from Allstate Sales & Leasing Corporation ("Allstate"). Curbo Aff. ¶¶ 3-4. Allstate is an independent Peterbilt distributor.[4] Curbo Dep. 59. When the truck was originally manufactured, the brakes were fastened to the floor with Bunting pivot bearings. Curbo Aff. ¶ 2. About two months before the accident, however, Randy's had replaced the truck's pivot bearings with bearings that it purchased from Allstate. Pelletier Dep. 42-43; Goldner Dep. 23.

## II. ANALYSIS

### A. Summary Judgment Motion

#### 1. Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v.*

---

[3] The parties (and the record) also refer to these components as "pillow blocks."

[4] Allstate's name has apparently since changed to "Allstate Peterbilt." *See, e.g.*, Cragg Aff. Ex. K at 1. As Bruska confirmed at oral argument, there is no dispute that Allstate Peterbilt is also an independent Peterbilt dealer.

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

2. Identity of the Manufacturer and Distributor

Peterbilt and Bunting move for summary judgment, contending that Bruska lacks evidence to establish that Bunting manufactured or that Peterbilt distributed the allegedly defective bearings.  At oral argument, Bruska admitted that there is no admissible evidence in the record that Peterbilt distributed the bearings.  In his briefing, Bruska cited a letter from David Cermak at Allstate saying that Allstate purchased the bearings from PACCAR Parts, which is a division of PACCAR Corp.  Cragg Aff. Ex. I.  Peterbilt is apparently also a division of PACCAR.  Curbo Aff. at 1-2.  But Bruska cites no evidence detailing the relationship between Peterbilt and PACCAR Parts, nor does he explain why Peterbilt would be liable for products sold by PACCAR Parts.  More importantly, as Bruska conceded, the Cermak letter is hearsay and cannot defeat summary judgment.  *See Jones v. McNeese*, 746 F.3d 887, 894-95 (8th Cir. 2014).  Because there is no admissible evidence in the record from which a jury could conclude that Peterbilt distributed the bearings, the Court grants defendants' motion as to Peterbilt.

The Court finds, however, that there is sufficient evidence in the record from which a jury could conclude that Bunting manufactured the bearings. Randy's parts supervisor, Kent Goldner, testified that he tracks his inventory using manufacturers' part numbers. Goldner Dep. 19. Goldner further testified that the subject bearings were sealed in a plastic bag with the manufacturer's part number on it. Goldner Dep. 29-30.

Randy's "parts usage" history for Bruska's truck (which is likely admissible under Fed. R. Evid. 803(6)) documents the installation of the bearings in August 2009. Pelletier Dep. 35-38. The part number listed for the bearings is LA081208. Pelletier Dep. 39 & Ex. 6 at 2. This is the same part number listed in Bunting's catalogue for bearings with a base of 2.25 inches. *See* Cragg Aff. Ex. G at 90 (listing part number LA081208 for a bearing with a 2.25-inch base). Moreover, based on the shape and relative size of one of the subject bearings, Bunting's corporate designee thought that it could be a Bunting LA081208 bearing.[5] Keogh Dep. 16-17.

---

[5] Bruska also cited a photograph in defendants' expert report to establish that the subject bearings had a base of 2.25 inches. *See* Berger Aff. Ex. 10 at 11, Fig. 1. Defendants do not dispute Bruska's characterization of this photograph. The Court notes, however, that nothing in Exhibit 10 appears to identify the bearing in the photograph as one of the subject bearings and that the measurement depicted in the photograph is at least ambiguous, as it seems to show that the bearing's base is 2.4 inches. The Court therefore does not rely on this photograph.

In light of evidence that (1) Randy's tracked the subject bearings using a Bunting part number and (2) the bearings are similar in shape and size to the Bunting bearing with that part number, a jury could reasonably infer that Bunting manufactured the bearings. Bruska need only prove that it is more likely than not that Bunting manufactured the bearings; it is not necessary for him to establish that fact beyond a reasonable doubt or even by clear and convincing evidence.

Bunting points out that the subject bearings were made of a different alloy than that specified for its LA081208 bearings. That could mean, of course, that the bearings were not made by Bunting, or it could mean that, because of some flaw in the manufacturing process, Bunting used an incorrect alloy in manufacturing the bearings. Given the other evidence in the record tending to show that the bearings involved in Bruska's accident were Bunting bearings, the mismatch between the alloy in the subject bearings and that specified by Bunting is for the jury to consider.

### 2. Other Arguments

Defendants raise numerous additional arguments, most of which are simply reiterations of their argument that Bruska lacks sufficient evidence to show that they manufactured or distributed the replacement bearings.[6] Defendants also argue,

---

[6]In a reply brief, Bunting argues that Bruska has not offered any evidence that Bunting designed the brake assembly or that Bunting was ever asked whether bearing LA081208 was appropriate for use in a brake assembly. Essentially, Bunting seems to
(continued...)

however, that Bruska cannot prevail on his failure-to-warn and warranty claims because he has no evidence to support them. In addition, defendants point out that Bruska's implied-warranty claim is preempted by his strict-liability claim.

At oral argument, Bruska agreed that his warranty claims should be dismissed. With respect to his failure-to-warn claim, Bruska testified that he cannot recall whether he looked for warnings, that he never asked to see the owner's manual for the truck, and that there is no warning that would have prevented the accident. Bruska Dep. 81-82. As a result, Bruska cannot show that the lack of a warning about the defect caused his injuries. *See Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 924 (8th Cir. 2004) ("Proximate cause focuses on the individual product user and requires some admissible evidence the product user would have acted differently had the manufacturers provided adequate warnings.").

---

⁶(...continued)
be arguing that the bearing was not intended to be used in a brake assembly. *See Lee v. Crookston Coca-Cola Bottling Co.*, 188 N.W.2d 426, 432 (Minn. 1971) (plaintiff must show that product was defective and unreasonably dangerous for its intended use). Bunting raised this argument for the first time in a reply brief, however, and the Court therefore will not consider it. *See Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd.*, 491 F. Supp. 2d 871, 878 (D. Minn. 2007) ("federal courts do not, as a rule, entertain arguments made by a party for the first time in a reply brief"); *see also Smith v. United States*, 256 F. App'x 850, 852 (8th Cir. 2007) ("the district court did not err in dismissing claims raised for the first time in a . . . reply brief"); *Navarijo-Barrios v. Ashcroft*, 322 F.3d 561, 564 n.1 (8th Cir. 2003) ("It is well settled that we do not consider arguments raised for the first time in a reply brief.").

Bruska nevertheless argues that if—as defendants contend—the pivot bearings failed because they were improperly installed, then defendants had a duty to provide proper installation instructions. Bruska cites no evidence, however, that the mechanics who installed the replacement bearings would have done anything differently if they had received installation instructions. His failure-to-warn claim must therefore be dismissed. *See id.*

### B. Daubert Motion

#### 1. Standard of Review

Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*See also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

District courts have wide latitude in deciding whether an expert's testimony is reliable. *Olson v. Ford Motor Co.*, 481 F.3d 619, 626 (8th Cir. 2007). In determining whether an expert's testimony is the product of "reliable principles and methods," district courts consider such factors as:

> (1) whether the theory or technique can be (and has been) tested;
>
> (2) whether the theory or technique has been subjected to peer review and publication;
>
> (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and
>
> (4) whether the theory or technique is generally accepted in the scientific community.

*Smith v. Cangieter*, 462 F.3d 920, 923 (8th Cir. 2006). Because this inquiry is necessarily fact-specific, there is no single requirement for reliability. *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005). Instead, these factors are flexible and should be adapted or rejected as the case demands. *Id.* The burden of establishing that the proposed testimony is admissible under Rule 702 is on the proponent of the expert opinion. *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006).

2.  James Brusso

Defendants move to exclude the testimony of James Brusso, Bruska's expert witness. Brusso has a Ph.D. in metallurgical engineering and over two decades of experience as a metallurgical engineer. Cragg Aff. Ex. D.  In a December 30, 2014 expert report, Brusso opined, among other things, that the failure of the pivot bearings most likely occurred due to overload and that defective manufacturing resulting in a weaker-than-specified material could also have contributed to the failure.  Cragg Aff. Ex. A at 3.

After Brusso produced this expert report, a chemical analysis of the bearings revealed that they were cast with an alloy that contains 18 times more zinc than the alloy specified for Bunting's bearings.  Brusso Dep. 77.  At his deposition, Brusso testified that such an alloy would be more brittle than the alloy specified for the Bunting bearings.  Brusso Dep. 93.  He also expanded on his earlier report, explaining that, based on the appearance of the fracture, the bearings failed in a single-event, brittle manner and the use of the incorrect alloy could have contributed to this failure.  Brusso Dep. 92-93, 157.  Although Brusso could not rule out improper installation, he testified that it was unlikely to have been a factor because the break was a brittle fracture and there was a clean fracture surface.  Brusso Dep. 36, 115-16.  As Brusso explained, the stresses from tightening a bolt would be compressive, but a fracture is created by tensile

stress. Brusso Dep. 153. Brusso also testified that a steel bracket would likely be an appropriate alternative design and opined that a non-defective bearing should not catastrophically fail in normal conditions. Brusso Dep. 36, 41-43, 53, 85-86, 88.

Defendants attack Brusso's opinions as overly speculative and unreliable and claim that they are not based on sufficient facts or data. The Court disagrees. There is no dispute that Bruska's accident occurred because the pivot bearings broke. The only issue is what caused them to break. Although Brusso did not test his theory that the breakage was due to inherent problems with the aluminum alloy, his testimony is based on his knowledge of the properties of the metals at issue and supported by evidence regarding the appearance and nature of the break. Given Brusso's experience and credentials as a metallurgical engineer, he is qualified to offer these opinions, and these opinions are not so speculative as to be inadmissible. *Cf. Kapps v. Biosense Webster, Inc.*, 813 F. Supp. 2d 1128, 1149-50 (D. Minn. 2011) (permitting expert to testify that a non-defective catheter would not have failed under normal-use conditions).

Brusso's testimony is not without problems, but "[t]he Supreme Court has been clear about how infirmities in expert testimony should be exposed: 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible

evidence.'"  *Olson*, 481 F.3d at 626 (quoting *Daubert*, 509 U.S. at 596).  The Court therefore denies defendants' motion to exclude Brusso's testimony.[7]

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Defendants' motion for summary judgment [ECF No. 69] is GRANTED IN PART and DENIED IN PART.

   a. The motion is GRANTED as to all of plaintiff's claims against defendant Peterbilt Motors Company, and those claims are DISMISSED WITH PREJUDICE AND ON THE MERITS.

   b. The motion is GRANTED as to plaintiff's warranty and failure-to-warn claims against defendant Bunting Bearings, LLC, and those claims are DISMISSED WITH PREJUDICE AND ON THE MERITS.

   c. The motion is DENIED in all other respects.

---

[7] Defendants also argue that Brusso's testimony is unreliable because he opines that the bearings are defective on the basis of their potential to corrode even though there is no dispute that corrosion was not the cause of their failure.  Bruska does not intend to argue that the risk of corrosion rendered the bearings defective, however, and thus this aspect of defendants' motion is moot.

2. Defendants' motion to exclude expert testimony [ECF No. 72] is DENIED.

Dated: November 17, 2015     s/Patrick J. Schiltz
                             Patrick J. Schiltz
                             United States District Judge